# CRIMINAL COURT OF BALTIMORE CITY.

Filed July 28, 1911.

STATE
VS.
J. ZACHARY TAYLOR.

*James Latane,* Assistant State's Attorney, for the State of Maryland, plaintiff.

*Robert F. Leach* and *Walter Jeffreys Carlin* for J. Zachary Taylor, defendant.

HARLAN, J.—

The defendant was indicted in this case, under the Food and Drugs Law of Maryland, enacted by the General Assembly at the January Session, 1910, Chapter 156.

The indictment contains two counts, as follows:

1. "The Jurors of the State of Maryland, for the body of the City of Baltimore, do on their oath present that J. Zachary Taylor, late of said city, on the fifth day of February, in the year of Our Lord nineteen hundred and eleven, at the city aforesaid unlawfully did sell to one John W. Arnold a certain article of food, to wit, one quart of ice cream, which then and there contained four per cent. and upward of milk fat, and which was then not and there labelled so as to show the percentage of milk fat contained in said ice cream, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State.

2. "And that Jurors aforesaid, upon their oath aforesaid, do further present that the said J. Zachary Taylor, late of said city, on the said day in the said year, at the city aforesaid, unlawfully did manufacture for sale, produce for sale and expose for sale a certain article of food, to wit, one quart of ice cream, which then and there contained four per cent. and upward of milk fat, and which was not then and there labelled so as to show the percentage of milk fat contained in said ice cream."

To this indictment, and to each count thereof, a demurrer has been interposed, and the causes of the demurrer assigned, are:

1. "That the counts of said indictment and each of them are wholly insufficient to apprise this defendant of the charge or charges against him and fail to charge any crime with sufficient certainty to enable the defendant to plead thereto. Particularly are the said counts insufficient and uncertain in that they fail to set forth the particular kind of ice cream which the defendant is charged with selling.

(2) That said indictment and each and every count thereof is indefinite, uncertain and insufficient and fails to charge a crime, in that it merely alleges the sale of the product without

alleging that the same was in a container of any description or character, and defendant is, therefore, unable to plead thereto for the reason that he is not informed as to what particular portion of the regulation described by Section 140I of Chapter 156 of the Acts of 1910 of Maryland, which modifies Section 140F of the said law, that he has failed to comply with.

(3) That said indictment and each and every count thereof is insufficient in law in that it does not, nor do any of its counts, allege that subsequent to the passage of Chapter 156 of the Acts of 1910 of Maryland the State Board of Health did make or adopt uniform rules and regulations for the enforcement of said act and for the government of analysists, chemists, inspectors and employes appointed by said board; nor that the rules and regulations heretofore adopted in accordance with the provisions of the Food and Drug Act of the United States of June 30th, 1906, do not cover and control the collection of samples under this act; nor do they or any of them set forth any such rules or regulations or the substance thereof, nor state that any such rules and regulations had been adopted and were in force and effect at the time in said counts mentioned; nor do any of them set forth that the said rules and regulations, if in force, apply to the labelling of ice cream; nor do any of them allege that the said article of food which is alleged to have been manufactured and sold to one John W. Arnold, was examined in the laboratories of the State Board of Health under the direction or supervision of the State Food and Drug Commissioner; nor that it appeared from such examination that the article was misbranded within the meaning of the act; nor that the State Board of Health caused notice thereof to be given to the party from whom said sample was obtained; nor that the party so notified was given an opportunity to be heard; nor that any rules or regulations governing such hearing had ever been adopted; nor that it appeared to the State Board of Health that the defendant should be prosecuted; nor that the State Board of Health did certify the facts to the State's Attorney of the county or the State's Attorney of Baltimore City, together with a copy of the results of the analysis or the examination of such article duly authenticated by the analysist or officer making such examination. Nor do they or any of them set forth the certificate of said State Board of Health or the certificate of the analysist or the substance thereof. Defendant alleges that this proceeding was commenced by the State Board of Health and further alleges that no proper notice of the alleged violation was given to defendant.

(4) That said indictment and each and every count thereof is insufficient in that it fails to negative the exceptions included in the statute under which it is drawn. Section 140A, which defines the crime, contains an exception, and it is not alleged that the sale or manufacture of the article in question is not within the said exception.

(5) The indictment and each and every count thereof is insufficient in law, and fails to charge a crime in that the statute on which it is based is unconstitutional and void, being in violation of both the Constitution of the State of Maryland, and also of the Constitution of the United States, in that it makes an unjust and illegal distinction between persons in the same business, denies them equal justice and protection of the law, is in restraint of interstate commerce and deprives the defendant herein of his property and liberty."

An additional cause of demurrer to the second count of the indictment is:

"That the said count is double and charges more than one offense."

Both counts of the indictment relate to an article of food, to wit, one quart of ice cream, "which then and there contained four per cent. and upward of milk fat, and which was not then and there labelled so as to show the percentage of milk fat contained in said ice cream," and which it is charged in the first count of the indictment, the defendant unlawfully sold to one John W. Arnold, and in the second count unlawfully did manufacture for sale, produce for sale and expose for sale in Baltimore City. The crimes therefore alleged against the defendant, are the sale, and the manufacture, production and exposure for sale of ice cream in Baltimore City, containing more than four per cent. of milk fat, without the same being labelled so as to show the percentage of milk fat contained therein.

It therefore becomes necessary to examine the provisions of the Food and Drugs Act of Maryland, aforesaid, relating to labelling of the article of food, ice cream, sold or manufactured, produced or exposed for sale.

The object of the act, as disclosed by the title, is:

"Preventing the manufacture or sale of adulterated, misbranded, poisonous or deleterious foods, drugs, medicines, water, candies and liquors, and for regulating traffic therein within the State of Maryland, and to provide for the punishment of violations of its provisions, and to appropriate an annual sum of money for the purpose of enforcing this act."

The act adds to Article 43 of the Code of Public General Laws, title "Health," sub-title "Adulteration of Food and Drink," fifteen new sections, to follow Section 149 of said Article, and to be known as Sections 140A, 140B, etc., to 140O.

By reference to Section 140A it will be seen that it is made unlawful for any person within this State to manufacture for sale, produce for sale, expose for sale or sell any article of food, which is insufficiently labelled, within the meaning of this act.

Ice cream is an article of food within the act, and Section 140F in sub-section A provides that "Ice cream is a frozen product made from cream and other milk substances and sugar, with or without a natural flavoring and containing not less than 4 per cent. of milk fat, to which may be added fresh eggs and not exceeding 1 per cent. of pure gelatin, gumtragacanth or vegetable gum, without statement of such fact, and such goods may be called ice cream, provided the required percentage of fat it maintained. But such product, when containing 4 per cent. and upward of milk fat shall be labelled, showing the percentage of milk fat; if imitation flavoring materials are used, the label must state the fact," and Subsections B and C of said Section 140F, define "fruit ice cream" and "nut ice cream." When, therefore, the indictment charges the defendant in the first count with selling and in the second count with manufacturing for sale, a certain article of food, to wit, one quart of ice cream, containing 4 per cent. and upward of milk fat, and which was not then and there labelled so as to show the percentage of milk fat contained in said ice cream, using the words of Sub-section A to Section 140F, it seems to me there can be no ambiguity as to the kind of ice cream referred to in the charges.

It is what this act says may be called "ice cream," viz: a frozen product made from cream and other milk substances and sugar with or without natural flavoring, etc., and proof of the sale of any other kind of ice cream, would not sustain the indictment, whether fruit ice cream, nut ice cream or some other frozen product containing four per cent. and upwards of milk fat.

We are not concerned here and now with the question whether it is contrary to the statute, to sell or expose for sale, frozen products containing less than 4 per cent. of milk fat, under the description of ice cream.

The first reason assigned as ground for the demurrer to the indictment, that the counts thereof do not apprise the defendant, with sufficient certainty of the crime or crimes with which he is charged, particularly in that they fail to set forth the particular kind of ice cream defendant is charged with selling, cannot in my judgment prevail.

Passing over for the present, the second and third grounds of demurrer, the fourth ground, which is applicable to both counts of the indictment is that it does not negative the exception contained in Section 140, which section defines the offense. The portion of Section 140, which it is claimed should have been negatived, is as follows:

"Provided, that no article shall be deemed misbranded or adulterated within the provisions of this act when intended for export to any foreign country, and prepared or packed according to the specifications or directions of the foreign purchaser, when no substance is used in the preparations or packing thereof in conflict with the laws of the foreign country to which said article is intended to be shipped; but if said article shall be in fact sold or offered for sale for domestic use or consumption, then this proviso shall not exempt said article from the operation of any of the provisions of this act."

The general rule is that an exception in the enacting clause of a statute must

be negatived in an indictment, while one that is not in that clause, need not be, but is merely a matter of defense. The rule as thus announced is, however, not strictly accurate as applicable to all cases, and sometimes may be misleading. The real question to be determined, is whether the exception is descriptive of the offense or so incorporated in the clause as to make it a part of it;" "Keefer vs. State, 87 Md. 566;" or as stated by Archibald in his Pleading and Evidence in Criminal Cases (17 Ed.), p. 62: "If there is any exception contained in the same clause of the act, which creates the offense, the indictment must show negatively that the defendant or the subject of the indictment does not come within the exception. * * *

* * * If, however, the exception or proviso be in a subsequent clause or statute, R. vs. Hall, 1 T. R. 320, or although in the same section if it be not incorporated with the enacting clause by any words of reference. Steele vs. Smith, 1 Bar. & Ald. 35, it is in that case matter of defense for the other party and need not be negatived in the pleading."

In the case here referred to, Steele vs. Smith, 1 Bar. & Ald. 38, Bayly, J., remarked: "I cannot say that the proviso is a part of the same sentence, for if it had been omitted, the preceding sentence would have been entire. I admit that where there is an exception so incorporated with the enacting clause, that the one cannot be read without the other, there the exception must be negatived."

I might well dismiss this ground of objection by adopting as applicable to it, the words of Lord Ellenborough, C. J., in the same case: "I think there is not any ground for this objection. The sense of the enacting clause is perfect and complete, and the proviso is so distinct that several sections might have been interposed between that and the enacting clause, without any prejudice to the same." I may add the words of Abbott, J.: "There is a technical distinction between an exception and a proviso, which is well understood. All the cases say that if there be an exception in the enacting clause, it must be negatived, but if there be a separate proviso, it need not." And the rule stated by Mr. Bishop, 1 Bishop Criminal Procedure (4 Ed.) 639. "In

general and subject to exceptions growing out of doctrines already stated, an exception or proviso, which is not in the enacting clause, whether in the same section with it or not, need not be negatived."

The fourth objection must be overruled.

The fifth ground of demurrer will also be passed over for the present; to come to the objection to the second count, that it "is double and charges more than one offense." This objection is answered by the language of our Court of Appeals in Stearns vs. State, 81-345.

"If a statute makes it crime to do this or that or that, mentioning several things disjunctively, all may indeed, in general, be charged in a single count, but it must use the conjunctive "and" where "or" occurs in the statute, else it will be defective as being uncertain. Therefore an indictment upon a statute of this kind may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or" and it will not be double, and it will be established at the trial by proof of any one of them."

I shall now return to the fifth objection to the indictment, and to each count thereof that the statement on which it is based is unconstitutional and void, being in violation of both the Constitution of the United States and also of the State of Maryland. It is not necessary for the purposes of this demurrer to pass upon the constitutionality of the whole act, or any portion of the same, except that part of Section 140F, which deals with the labelling of ice cream, and particularly the provision: "But such product when containing 4 per cent. and upward of milk fat, shall be labelled, showing the percentage of milk fat." These words are not ambiguous; they are perfectly plain in meaning, and require no interpretation, so far as what the label is required to show as to the milk fat content.

They do not tell us what the label is to be made of, what its size is to be, whether it is to be placed upon the container of the ice cream, or in some way connected with the product itself, and apart from any regulations made by the Board of Health in pursuance

of the power conferred upon them by Section 140I (if the power to make such regulations can be validly delegated to that Board) it must be supposed that any reasonable method of labelling, which should be adopted, would be lawful, provided the label showed what the law requires, but there can be no escape from the conclusion, that no matter what the form of label, no matter how it may be connected with the ice cream, it must show the percentage of milk fat. A label which showed that the ice cream sold, or manufactured for sale, or produced for sale or exposed for sale "contains 4 per cent. and upward of milk fat," would not comply with the act for the requirement of the act, when the product contains 4 per cent. and upwards of milk fat, is not that it shall be so labelled," but shall be "labelled showing the percentage of milk fat," and a label showing that it "contains not less than" 4 per cent. and upwards of milk fat, is no more than the other, a compliance with the statute. When the legislature has fixed the amount of milk fat, which must be contained in standard ice cream, "which may be called ice cream," at 4 per cent., for what purpose, it may be asked, if this standard is maintained, should every portion of the same which is sold, and no matter how small the portion be, a quart, a pint, a single saucer or slice, be labelled, showing the exact percentage over and above this amount, not that the original package manufactured contained, but said portion contains. It must be assumed that standard ice cream is a healthy product. There is no pretense that ice cream, containing more than 4 per cent. of milk fat, is, more or less, beneficial to health than that which contains exactly 4 per cent. If any purchaser of ice cream desires knowledge as to milk fat content of his purchase, he can ask it or require a guarantee, and if any vendor thinks his trade could be increased by informing the public of the high percentage of milk fat contained in the ice cream sold or manufactured by him, he can do this, either by labels or other form of advertising. It does not appear what the relation is between the percentage of milk fat, over and above 4 per cent. in ice cream, which is pure, clean, unadulterated and not mislabelled and the public health, safety, security or welfare, which makes it necessary or desirable that the same and every portion thereof sold as an article of food, should be labelled so as to show such percentage, under penalty of punishment, for it is important to remember what is here made a crime, if this portion of the law is valid, is not the sale of impure, unwholesome, adulterated ice cream or ice cream which is so labelled as to deceive or defraud.

The authority of the legislature under the police power to enact legislation in the interest of the public health, the public safety, the public morals, even public convenience, and some of the authorities say, public welfare, although the latter is a term of such general import, as to be of little help to accurate definition, as well as its authority to enact laws to prevent fraud and deception, are undoubted, but the power is not unlimited. How far the legislature may, without violating the constitutional limitations upon its authority, and in the legitimate exercise of the police power, interfere with the manner in which one may conduct a private business, has so lately been considered by our Court of Appeals in the case of State vs. Caspare, decided February 2nd, 1911, that it will suffice, without review of the numerous authorities, to refer to its latest declaration upon the subject. The court adopts, sanctions and applies the following rule taken from the case of Lawton vs. Steele, 152 U. S. 33.

"The extent and limit of what is known as the police power have been a fruitful subject of discussion in the appellate courts in nearly every State of the Union * * *. To justify the State in thus interposing its authority in behalf of the public it must appear, first, that the interest of the public generally as distinguished from those of a particular class require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts."

Applying this rule, I am of opinion that the portion of the Pure Food and Drugs Law, Act 1910, Chapter 156, which requires the labelling of every portion of ice cream sold, or manufactured, produced and exposed for sale, when containing 4 per cent. and upward of milk fat, so as to show the percentage of milk fat content, is an arbitrary, unreasonable, unnecessary and oppressive interference with and restriction upon a lawful occupation, and is unconstitutional and void.

I have examined all the authorities cited by the State, in which laws prescribing the form and manner in which articles of food or merchandise shall be labelled, have been held valid, but the requirements in these laws were widely different from the provision before the court in the case at bar.

The demurrer to the indictment and to both counts thereof will, for this reason, be sustained.

The other reasons urged in support of the demurrer, raise interesting and important questions, but it does not seem to me well, in view of the conclusion I have just reached, to decide them in this case.

How far the legislature can delegate power to the Board of Health to make rules and regulations for the enforcement of the act, is not now before the court, for the defendant is not indicted for the sale of ice cream not labelled in accordance with the rules and regulations of the Health Board, but is indicted for the sale, etc., of ice cream which was not labelled so as to show the percentage of milk fat contained therein, using the words of the statute, and even if the Board of Health, under the power delegated to it, could make rules to enforce the act, which would have the force of law, and the violation of which would be a crime, it cannot be, it seems to me, successfully contended, that under the indictment before the court, the defendant could be convicted by showing not the plain requirement of the statute had been violated, but that what had been violated was something less than the statute required, and which the Board of Health thought reasonable. For, although the court may not take judicial notice of the rules and regulations of the Board, a pamphlet containing what purports to be the rules and regulations adopted and promulgated by it, has been placed in my hands, without objection of either side, and the Board apparently recognizing the.hardship of the law as written, has attempted to mitigate it, by requiring "all packages of ice cream, whether the container be made of metal, wood, or paper, must be labelled in conformity with the law, stating the milk fat content by using the words 'containing not less than'."

The distinction between enforcing the law and changing it, is too obvious to need comment.

Demurrer sustained for reasons stated.